1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*FOR PUBLICATION*

**UNITED STATES BANKRUPTCY COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | | |
|---|---|---|
| In re | ) | Case No.  19-90110-E-7 |
| | ) | Docket Control No.  SHA-2 |
| CAMPBELL WINGS, INC., | ) | |
| | ) | |
| Debtor. | ) | |
| ——————————————— | ) | |

**MEMORANDUM OPINION AND DECISION**

This voluntary Chapter 7 bankruptcy case ("Bankruptcy Case") was filed by Campbell Wings, Inc. on February 6, 2019.  On March 29, 2019, Irma Edmonds, the Chapter 7 Trustee ("Trustee"), filed a Motion to Reject the Lease of Real Property (the "Lease") commonly known as 1555 S. Bascom Avenue, in Campbell, California (the "Property").  Motion, Dckt. 25.  The Lease was identified as a twenty (20) year lease, which commenced on December 1, 2007.  The Order authorizing the rejection of the Lease was entered on April 7, 2019.  Order, Dckt. 30.

The Motion for Allowance of Administrative Expense now before the court was filed on June 26, 2019, by Hamilton and Bascom, LLC, the successor landlord of Property under the pre-petition Lease ("Applicant") that was rejected by the Trustee in this case.  Though filed in June of 2019, through various events and *bona fide* reasons for delays, the hearing on the Motion for Allowance of Administrative Expenses was not conducted until August 19, 2021.  The pleadings for this Contested Matter were filed by the Parties in 2019, 2020, and 2021 (COVID restrictions providing some significant challenges for the attorneys' and parties in prosecuting this Contested Matter.)

The Administrative Fee requested by Applicant as stated in the Motion for the sixty (60) day

period from February 6, 2019 commencement of this case to April 7, 2019 rejection of the Lease was "only" $379,863.02.  Motion, p. 2:11-23.  This asserted $379,863.02 administrative expense is broken down into the following component parts in the Motion:

    A.    Rent and Late Charges

        1.    February 2019 Rent...............................................($21,375.00)

        2.    February 2019 Late Change..................................($  1,068.75)
                [Rent being due on the 1st day of
                the month and delinquent if not
                paid by 10th day of the Month.  Lease, § 6.]

        3.    March 2019 Rent...................................................($21,375.00)

        4.    March 2019 Late Charge.......................................($  1,068.75)

        5.    April 2019 Rent.....................................................($21,375.00)

        6.    April 2019 Late Charge.........................................($  1,068.75)
                [Lease Rejected April 7, 2019]

    B.    Property Taxes For Administrative Expense Period

        1.    February 2019 Property Taxes...............................($  2,645.52)

        2.    March 2019 Property Taxes..................................($  2,645.52)

        3.    April 2019 Property Taxes....................................($  2,645.52)

    C.    Fire, vandalism, and general liability insurance
        for the Property (February 6 to April 7, 2019)..................($  1,219.71)

    D.    Emergency Roof Inspection and Repairs..........................($  1,200.00)

    E.    Installation of New Roof and Gutters.............................($174,054.00)

    F.    Repairs Related to Roof Damage....................................($  98,600.00)

    G.    Attorney's Fees (June 6 through April 7, 2019)...............($  20,521.50)

**Opposition of the Trustee**
**And Reply of Applicant**

       The Trustee objects to the allowance of the administrative expenses, in whole and in part, asserting that:

    1.    Funds sought are not actual or necessary to preserve the estate.

    2.    Applicant materially breached the Lease by depriving Debtor full use of the

premises.  Applicant admits having used an extensive portion of the Lease property for their own profit/benefit and to the exclusion of Debtor.  Thus, Trustee should not be responsible for paying the entirety of the rent and related fees and the costs should be prorated.

3.      The expenses sought to be recovered are unreasonable and undocumented.  The expenses were not incurred for the benefit of the estate and expenses must be limited to the fair and reasonable value of the Debtor's actual use.  Given the extensive use of Applicant's carwash and detailing businesses of the leased property, Applicant is unable to show that the leased property retains much market value, other than for Applicant's own purposes.

4.      Applicant has failed to substantiate that the expenses related to the roof repair were actual and necessary.  Even if Debtor was responsible for its repair, such failure to repair would be a pre-petition expense and thus not entitled to payment as an administrative claim.  Applicant offers no evidence that the roof has been replaced.  Lastly, Applicant intends to remove the building.

Opposition, Dckt. 52; *see also* Supplemental Opposition, Dckt. 103, Response, Dckt. 128.  Trustee filed a Supplemental Opposition further objecting to the expenses on additional grounds, including that Applicant is in violation of local regulations and Applicant cannot recover roof repair costs that would unjustly enrich Applicant.  Dckt. 103.

In Applicant's latest filing, a Reply to Trustee's Response (Dckt. 139), Applicant argues that lack of control over the entire leasehold is not dispositive of whether the motion should be granted. Applicant adding that even if Trustee did not have control "over a few parking spaces at the outskirts of the leasehold," the use of those spaces did not affect Debtor's use of the property as a restaurant. Further, Debtor was able to fully use the building for its restaurant operation until closing right after the Super Bowl that year. Applicant asserts that conversations with the City of Campbell regarding violation of local regulations or removal of the building are hearsay and inadmissible for purposes of this motion.

## APPLICABLE BANKRUPTCY LAW

Section 503(b)(1)(A) of the Bankruptcy Code accords administrative expense status to "the actual, necessary costs and expenses of preserving the estate. . . ."  The Trustee argues that the expenses are not necessary for preserving the estate.

Here, Applicant argues that the expenses incurred are administrative expenses not limited by § 503 and must be paid even if they are not related to the Trustee's use of the property.  Applicant argues the Ninth Circuit has held that claims arising under 11 U.S.C. § 365(d) are not limited by

3

§ 503(b)(1).[1]

With respect to the rejection of a lease of real property and the obligation of the bankruptcy estate to pay administrative expenses, 11 U.S.C. § 365(d) provides in pertinent part:

(d) . . .

(3) The trustee shall timely perform all the obligations of the debtor, except those specified in section 365(b)(2), arising from and after the order for relief under any unexpired lease of nonresidential real property, until such lease is assumed or rejected, notwithstanding section 503(b)(l) of this title . . .

(4) (A) Subject to subparagraph (B), an unexpired lease of nonresidential real property under which the debtor is the lessee shall be deemed rejected, and the trustee shall immediately surrender that nonresidential real property to the lessor, if the trustee does not assume or reject the unexpired lease by the earlier of-

     (i) the date that is 120 days after the date of the order for relief; or
     (ii) the date of the entry of an order confirming a plan.

In the language of 11 U.S.C. § 365(d)(3) concerning the performance of obligations under a lease of nonresidential property prior to rejections, those are only obligations that "arise <u>from and after</u> the order for relief" until the rejection. As discussed below, a bankruptcy estate is liable to pay only obligations that arise after the bankruptcy case was filed, and not "inherited" pre-petition defaults from the debtor.

The Ninth Circuit the Court of Appeals has addressed the post-filing through pre-rejection lease obligations owed by the Estate as an administrative expense, stating *Cukierman v. Uecker (In re Cukierman)* 265 F.3d 846, 850 (9th Cir. 2001):

We have held that claims arising under § 365(d)(3) are entitled to administrative priority even when they may exceed the reasonable value of the debtor's actual use of the property. *See Pacific–Atlantic*, 27 F.3d at 405. We did so because the "notwithstanding section 503(b)(1)" proviso exempts the amount of lease obligations that a trustee must timely pay under § 365(d)(3) from § 503(b)(1)'s limitation of administrative expenses to the fair value of the debtor's use of the property. *Id.*

---

[1] The provisions of 11 U.S.C. § 365(d) applicable to this proceeding are those in effect when the case was filed in 2019. Congress made several temporary amendments to 11 U.S.C. § 365(d) in 2020 that resulted in a renumbering of that subsection, renumbering pre-amendment 11 U.S.C. § 365 as 11 U.S.C. § 365(d)(3)(A), and then added some additional § 365(d)(3) paragraphs, (B) and (C), adding some temporary COVID-19 provisions, which additional paragraphs are set to sunset in 2022. The court has used the section references to the law as it existed in 2019 when the rejection occurred for clarity.

When the trustee fails to pay an obligation, the amount accorded administrative priority is similarly not subject to the § 503(b)(1) limitation. *Id.* We reasoned that to hold otherwise would reward trustees for failing to perform lease obligations, a result entirely at odds with § 365(d)(3)'s purpose of ensuring prompt payment for landlords. *Id.*

Section 365(d) fixes the time within which the trustee must assume or reject an unexpired lease or executory contract. The time is statutory and may not be extended based on excusable neglect. Except for assumption in a plan, assumption may be accomplished only by a motion.

As addressed above, this Lease was rejected by order of this court on April 7, 2019. Order, Dckt. 30. Thus, the time period from the filing of this Bankruptcy Case through rejection of the Lease (11 U.S.C. § 365(d)(3)) is February 6, 2019 through April 7, 2019.

In a subsequent decision, the Ninth Circuit reaffirmed the "date of filing (commencement of case) to date of rejection" period for which the obligations arising under the lease need to be performed by the trustee for the bankruptcy estate, stating:

> The bankruptcy code requires that the trustee shall timely perform all the obligations of the debtor, except those specified in section 365(b)(2), **arising from and after the order for relief** under any unexpired lease of nonresidential real property, **until such lease** is assumed or **rejected**, notwithstanding section 503(b)(1) of this title. 11 U.S.C. § 365(d)(3). In other words, the trustee assumes or rejects an unexpired lease of nonresidential real property, the trustee must perform obligations under that lease in accordance with 11 U.S.C. § 365(d)(3). *Cukierman v. Uecker (In re Cukierman)*, 265 F.3d 846, 849 (9th Cir. 2001).

> We adopted a bright-line rule that all claims arising from a debtor's nonperformance of post-petition, pre-rejection lease obligations are entitled to administrative expense priority in *Cukierman*.

*TreeSource Indus. v. Midway Engineered Wood Prods. (In re TreeSource Indus.)*, 363 F.3d 994, 997 (9th Cir. 2004) [emphasis added]. The obligation must arise after the filing of the bankruptcy case and prior to rejection. The language of 11 U.S.C. § 365(d) does not visit on the bankruptcy estate (and other creditors of the bankruptcy estate) the financial obligation to perform and cure the pre-petition breaches on the Lease (failure to perform the pre-petition obligations) by the Debtor.

## DISCUSSION

At the August 29, 2021 hearing, the court addressed with the Parties what Congress means in 11 U.S.C. § 365(d)(3) when it states what obligations under the Lease for which the estate must pay as an administrative expense. For this Bankruptcy Case, those obligations must <u>arise</u> <u>from and</u>

after the February 6, 2019, order for relief (the filing of this Bankruptcy Case) and prior to the April 7, 2019, rejection of the Lease.  If the roof damage exists at the time the case is filed, is there an obligation "arising from and after the order for relief" to repair damage that occurred before and prior to the order for relief?

Second, if the roof is damaged when the case is filed, what damages are actually incurred by the Applicant after the case is filed and prior to the rejection of the Lease based on the trustee not repairing the pre-petition damaged roof?  Are the damages only further damage to the roof caused post-petition?

The fundamental question which must be addressed for this Application is the proper computation of damages arising from the breach of an obligation "**arising from and after** the order for relief . . . **until** such lease . . . is rejected."  When it is a simple rent amount for a post-petition period of the lease, such as in the *Cukierman* cited by Applicant, it is an easy computation.  When it relates to existing pre-petition damages, it does not appear so simple.

Given the careful statutory scheme of providing for pre-petition claims and the priority given for administrative expenses for post-petition damages caused, it is questionable that Congress has drafted 11 U.S.C. § 365(d)(3) to provide an "all pre-petition default payday" for landlords in that section.  In light of the carefully crafted language of 11 U.S.C. § 503, § 365(d), and § 507, which provides that allowed administrative expenses are paid prior to any disbursements being made to "mere common creditors" with unsecured claims for pre-petition obligations, the court is hard pressed to understand the assertion that Applicant's pre-petition claims for a decade of pre-petition damages  caused by Debtor failing to maintain the roof pre-petition is given preferential treatment over other pre-petition unsecured claims.

Applicant's argument is that the obligation for pre-petition defaults and damages from the pre-petition defaults by Debtor that arose prior to the filing of this Bankruptcy Case are deemed to have "arose after the filing of the petition" since the lease was still in effect.  Therefore, the Trustee is obligated to make or pay as an administrative expense repairs for all of the pre-petition defaults in repair and maintenance of the property, even though the Trustee is not assuming the Lease.  Applying Applicant's interpretation of 11 U.S.C. § 365(d) to the facts of this Bankruptcy Case, then

one millisecond after this Chapter 7 Bankruptcy Case was filed the hundreds of thousands of dollars of pre-petition default damages caused by the Debtor transmogrified [2] into an administrative expense to be paid before other pre-petition unsecured claims.

At the hearing, counsel for the Trustee asserted that the Lease has been breached by Applicant through the use of an excessive number of parking stalls in the lot, and therefore no monies are due under the Lease. Lease, Dckt. 44, p. 10. The Trustee points include the following:

A.     California law - lease agreement - Applicant has to prove it performed under the lease

        a.     It is asserted that Applicant breached the lease by its use of parking lot for the car wash tenant.

        b.     In the pre-petition state court litigation, which was stayed by the Parties following the commencement of this case:

                (1)     Applicant made extensive use of the lease property, infringing on the portion relating to the lease at issue in this case.

                (2)     The car wash used 33 parking stalls, which was a breach of the lease with the Debtor that became property of the bankruptcy estate.

        c.     Trustee asserts that the bankruptcy court must first determine if a lease claim, which includes the breaches asserted by Trustee, exists under state law. The bankruptcy court is not to leave that to non-bankruptcy court proceedings and give an administrative expense to landlord without regard to whether such right to payment actually exists.

                (1)     After the breach claim is determined, the bankruptcy court is then to determine what portion is given administrative priority

B.     Specific evidence identified at the hearing by the Trustee concerning the allowance and amount of an administrative expense in this Contested Matter includes:

        1.     Terms of Lease – Dckt 44

        a.     Pg. 10 - Tenant is to maintain the premises during the lease term

        b.     At conclusion of lease term return the premises to the Applicant

---

[2] "Some common synonyms of transmogrify are convert, metamorphose, transfigure, transform, and transmute. While all these words mean "to change a thing into a different thing," transmogrify suggests a strange or preposterous metamorphosis." https://www.merriam-webster.com/thesaurus/transmogrify.

    c.    Debtor, as tenant, had an ongoing duty:

        (1)    For the Estate to be obligated for an administrative expense, the damages must have occurred post-petition, and not pre-petition damages that are part of Applicant's bankruptcy claim.

        (2)    The Applicant has the burden of proof to establish that there is an administrative expense owed by the bankruptcy estate.

2.    Dorsa Declaration for Applicant, Dckt. 43

    a.    P. 4, ¶ 17 - Testimony that the tenant, the Debtor, had breached Lease by failing to maintain the roof during pre-petition tenancy

        (1)    Shows the pre-petition damages

    b.    P. 3, ¶ 11 - "Testimony" that Debtor conducted a Super Bowl party pre-petition before it closed down operations is based merely on information and belief– not personal knowledge testimony under penalty of perjury.

3.    Trustee asserts that the Reply of Applicant (Dckt. 139) provides conflicting testimony in various declarations, including:

    a.    Only a few parking spaces were used.

    b.    Exhibit 9, Dorsa State Court Declaration, (Dckt. 106) states and includes:

        (1)    P. 5; map of the property - shows 33 parking stalls being used by car wash.

        (2)    P. 7; that Larken Car Wash used spaces - to park customers and employee cars.

C.    With respect to the legal fees sought to be included in the administrative expense, the Lease (Dckt. 44 Exhibit A) provides a contractual basis for recovery of prevailing party legal fees. Once the Lease has been rejected, the bankruptcy court must determine what prevailing party attorney's fees are owed to Applicant, and what portion is an administrative expense and what is part of the creditor's unsecured claim.

D.    With respect to the roof damages, the repair obligations arose pre-petition under the Lease and not arising post-petition. Dckt. 44. They are part of Applicant's bankruptcy claim, not an obligation of the bankruptcy estate that arose after the commencement of the case and prior to rejection of the Lease.

With the exception of the pre-petition roof damage, Applicant reported that the expenses, including the emergency roof repair, are all specifically for, and amortized to be for, only the post-petition, pre-rejection period. This is stated to include the attorney's fees requested. Applicant states it has not attempted to assert that the Trustee and Bankruptcy Estate had an obligation under

11 U.S.C. § 365(d)(3) to cure the pre-petition defaults, but only to provide Applicant hundreds of thousands for a new roof based on pre-petition roof damage over a decade prior to the Bankruptcy Case being filed.

As the parties are well aware, there is a plethora of decisions addressing arguments concerning such breaches and right to damages pursuant to 11 U.S.C. § 365(d)(3) which will be paid as an administrative expense, as opposed to just being included in Applicant's unsecured claim for the breach of the Lease (it being rejected and not being assumed). The Parties focused on the relevant Ninth Circuit authorities and the "plain language" of the statute written by Congress.

### DETERMINATION OF 11 U.S.C. § 365(d)(3)
### OBLIGATIONS OWED APPLICANT

**Lease Payment Obligations**

The Lease was entered into on November 7, 2007. Lease, p. 1, Exhibit A; Dckt. 44. The Lease provides in Section 6 for rent in the February 2019 through March 2019 period of the Lease (the 12th year of the Lease) in the amount of $21,375.00 per month.

The Trustee argues that no lease payments should be due from the estate for the post-petition months of February 2009 (Bankruptcy Case filing month) through April 2009 (Lease rejection month) because of alleged interference with the Bankruptcy Estate's use of the Property, the major "breach" allowing an adjoining business on the property to use thirty-three parking spots that are for the Estate's Property.

This Chapter 7 case was filed on February 6, 2019 by the Debtor. No order authorizing the Trustee to operate any business of the estate was issued by the court. 11 U.S.C. § 704(a)(8). While the Trustee argues that she did not have full access to all of the Property, because those thirty-three parking spaces being used by an adjoining lessee of Applicant, the Trustee does not explain how that impeded her use (having no authorization to operate a business) of the Property. For this Bankruptcy Estate, the actual and effective "use" of the Property being the Trustee evaluating whether the Bankruptcy Estate had a lease for which the defaults could be cured, assumed, and assigned for a profit. Theoretically, if the Trustee found the use of the parking spaces to be legally offensive, she could have reported the trespass to the authorities and asserted her claims for damages

1  against the trespassers.

2        The court reads this portion of the Trustee's Opposition to effectively be, 'I couldn't use the

3  Property because I could not operate the business in this Chapter 7 case.  But the Applicant allowing

4  the adjoining business to use the parking spots, which did not impair my ability to assess whether

5  the estate would cure, assume, and assign the Lease, should be grounds for the Bankruptcy Estate

6  not paying for retaining the Property and preventing Applicant from exercising its rights to protect

7  its interests during the post-petition period from February 6, 2019 through April 7, 2019.' [3]  The

8  court does not find such a contention persuasive or there being sufficient evidence showing a breach

9  of the Lease by Applicant which absolves the Bankruptcy Estate from paying its obligations as

10  required under 11 U.S.C. § 563(d)(3).

11        Using the plain language of 11 U.S.C. § 365(d)(3), the rent and late payment obligations that

12  came due during the period February 6, 2019 through April 7, 2019 were:

13          1.     February 2019 Rent................................................($21,375.00)

14              a.     February 2019 Late Change........................($  1,068.75)

15                     (1)    [Rent being due on the 1st day of
16                     (2)    the month and delinquent if not
                   (3)    paid by 10th day of the Month.  Lease, § 6.]

17          2.     March 2019 Rent..................................................($21,375.00)

18              a.     March 2019 Late Charge............................($  1,068.75)

19          3.     April 2019 Rent....................................................($21,375.00)

20        The Lease was rejected on April 7, 2019, which is before April 10, 2019, the date when an

21  obligation to pay a late fee for April 2019, would have arisen.  The court does not allow a late fee

22  for April 2019.

23        The court allows pursuant to 11 U.S.C. § 365(d)(3) Applicant $66,262.50 in rent and late

24  fees which are "arising from and after the order for relief [February 6, 2019] under any unexpired

25  lease of nonresidential real property, until  such lease [was] . . . rejected" on April 7, 2019.

26  ///

27

28       [3]  The court's paraphrasing of the Trustee's position.

**Property Tax Obligations**

Section 10 of the Lease requires the tenant to pay as additional rent the property taxes for the Property. Applicant has *pro rated* the annual tax obligation to the following three monthly amounts for the months of February, March, and April 2019 (the period from the order for relief and the rejection of the Lease) as follows:

    1.        February 2019 Property Taxes..............................($  2,645.52)

    2.        March 2019 Property Taxes...................................($  2,645.52)

    3.        April 2019 Property Taxes.....................................($  2,645.52)

For the *pro rated* property taxes, Applicant computes the portion of the tax obligation for the actual months that the Property was part of the bankruptcy estate from the commencement of the case to rejection. Applicant has not sought to recover property taxes for the entire 2019 year or even for the entire January through April 2019 period when the first property tax installment payment was required during the first half of 2019.

The court allows, pursuant to 11 U.S.C. § 365(d)(3), Applicant $7,936.56 for the *pro rated* property taxes which are "arising from and after the order for relief [February 6, 2019] under any unexpired lease of nonresidential real property, until such lease [was] . . . rejected" on April 7, 2019.

**Fire, Vandalism, and
General Liability Insurance Obligations**

Section 15 of the Lease requires the tenant to pay "[i]nsurance on the building and improvements that may be built or placed on the Premises, against the hazard of fire, with all standard extended coverage, including vandalism and malicious mischief, in an amount equal to their full insurable value, with a replacement cost endorsement, excluding the cost of excavation and of foundation below the level of the ground." Applicant seeks the cost of such insurance, which Applicant obtained, in the *pro rated* amount of $1,219.71 for the period February 6, 2019, through April 7, 2019.

The court allows pursuant to 11 U.S.C. § 365(d)(3) Applicant $1,219.71 for the *pro rated* expense of obtaining the above insurance on the property which amount is "arising from and after

the order for relief [February 6, 2019] under any unexpired lease of nonresidential real property, until such lease [was] . . . rejected" on April 7, 2019.

**Emergency Roof Inspections and Repairs Obligations**

Section 11 of the Lease requires the Debtor, as the tenant, at Debtor's expense, to keep the Property in good condition and repair. Applicant seeks to recover $1,200.00 for an emergency roof inspection and repairs to address existing leaks in the Property, which inspection and repairs occurred between February 2, 2019, and April 7, 2019. The Trustee opposes paying such expenses, asserting that they are: (1) unreasonable and undocumented, (2) were not incurred for the benefit of the Bankruptcy Estate, and (3) such expenses must be limited to the fair and reasonable value of the Debtor's actual use.

In the evidence, Applicant provides sufficient documentation of there being $1,200.00 in expenses for an emergency inspection and repairs to address leaks, which appear to be the result of long-standing damage to the property due to the Debtor's pre-petition failure to maintain and repair the Property. While it is not the Bankruptcy Estate or Trustee's failure, but the Debtor's failure, to have maintained the Property pre-petition to which the leaks and repairs relate, Applicant had the right to address those existing conditions (which maintained the post-petition, pre-rejection *status quo*) as reasonable for the limited period of time the Bankruptcy Estate was holding the Property prior to rejecting the Lease. Applicant has provided sufficient evidence of the conditions to be addressed and the expense (Declarations of Barton Dorsa, Dckt. 43, and Mark Levinson, Esq., Dckt. 126) for the court to conclude that the very modest expense of $1,200.00 was incurred to address roof leaks during the February 2, 2019, to March 7, 2019 period.

The court allows, pursuant to 11 U.S.C. § 365(d)(3), Applicant $1,200.00 for the roof inspection and leak repairs "arising from and after the order for relief [February 6, 2019] under any unexpired lease of nonresidential real property, until such lease [was] . . . rejected" on April 7, 2019.

**Installation of New Roof and Gutters,
Repairs Related Pre-Petition Roof Damage**

Applicant also seeks to recover $272,654.00 as part of the 11 U.S.C. § 365(d) obligation for

which payment would be made as administrative expense for damages to the Property that occurred during the term of the Lease. As discussed below, these damages and lack of repair (either by Debtor or Applicant as it had the right to do under the Lease) occurred pre-petition and not post-petition after entry of the order for relief and prior to rejection period as required in 11 U.S.C. § 365(d)(3). If the court were to find Applicant's argument persuasive and that the plain language as written by Congress to so hold, the results would be perverse and inconsistent with not only the plain language of 11 U.S.C. § 365(d)(3) but the Bankruptcy Code and structure of bankruptcy law created by Congress.

In the Points and Authorities filed with the Motion, the basis for recovering $272,654.00 for Installation of a new roof and gutters, plus repairs for damages to the roof, as part of the 11 U.S.C. § 365(d)(3) lease obligations arising during the February 2, 2019 (commencement of bankruptcy case) and April 7, 2019 rejection, Applicant explains:

> The last two categories relate to the replacement of the roof and other roof related repairs that **were caused by the Debtor-tenant failing to comply with its lease requirements**. According to Section 11 of the Lease, the tenant is responsible for maintaining the Property, including among other things, making sure the roof does not leak and that the roof is maintained in a condition that protects and preserves the Property.
>
> The estimate for the roof replacement and other roof repairs were exasperated by **Debtor's failure to timely repair the roof over the term of the lease** and by the extremely bad weather that took place during the time period of February through April 2019. As a result, the cost of those repairs and replacement should be allowed as part of this Administrative expense for [Applicant].

Applicant Points and Authorities, p. 6:10-19; Dckt. 42 (emphasis added). In this statement of the basis for including the $272,654.00, Applicant clearly states that these damages caused by the alleged pre-petition failures of Debtor "were exasperated by **Debtor's failure to timely repair the roof over the term of the lease**," and then adds that there was bad weather during the brief sixty (60) days following the commencement of this case to the rejection of the Lease.

The Lease (Exhibit A, Dckt. 44) was entered into November 7, 2007. The pre-petition period from November 7, 2007, to the February 2, 2019 filing of the Bankruptcy Case, consists of One Hundred Thirty-Five (135) Months (not counting the month of February 2019), which totals Four Thousand Four Hundred and Fifteen (4,415) Days during which the Property was under the control

1   of the Debtor, who was responsible for maintenance and repairs.

2         With the Bankruptcy Case being filed on February 6, 2019, and the Lease being rejected on

3   April 7, 2019, the period of time after the commencement of the case until the rejection of the Lease

4   for which obligations arising under the Lease are to be paid by the Bankruptcy Estate is a period

5   spread over three calendar months, for a total of Sixty (60) Days.

6         The Sixty (60) Days during which the Bankruptcy Estate is liable for obligations arising after

7   the commencement of the Bankruptcy Case under the Lease for repairs and maintenance pursuant

8   to 11 U.S.C. § 365(d)(3) is 1.34% of the total period from the commencement of the Lease on

9   November 7, 2007, through the February 2, 2019 commencement of the Bankruptcy Case, and until

10  the Lease  was rejected on April 7, 2019.

11        Applicant asserts that the Bankruptcy Estate has an obligation to pay as an administrative

12  expense all of the pre-petition repair and maintenance pre-petition defaults and damages caused

13  pre-petition by Debtor.  Applicant further asserts that this includes purchasing for Applicant a brand-

14  new roof as the remedy for the pre-petition defaults by Debtor.  As noted herein, the building and

15  roof were in the bankruptcy estate for only 1.34% of the time the total time of the Lease being in

16  existence prior to rejection.

17        The evidence presented by Applicant concerning the maintenance, repair, and asserted

18  obligation arising during the 60-day period from the commencement of the Bankruptcy Case for the

19  Bankruptcy Estate to purchase for Applicant a brand-new roof due to ten pre-petition years of

20  asserted damages consists of the Declaration of Barton Dorsa, whose testimony is (identified by the

21  paragraph number in the Declaration):

22              7.       According to Section 11 of the Lease, the tenant is responsible for
                 maintaining the Property, including among other things, making sure the roof
23              does not leak and that the roof is maintained in a condition that protects and
                 preserves the Property.

24

25              16.      At the time the bankruptcy was filed, the Bay Area and much of
                 California was having severe rainstorms for much of February 2019. Right
26              about the time this bankruptcy was filed, there were serious leaks in the roof
                 that necessitated immediate repairs. I am informed and believe that the
27              Chapter 7 trustee had no money to make those repairs. As a result,
                 [Applicant]   paid for emergency roof repairs in order to preserve the
28              Property. Those repairs are set forth below.

This testimony demonstrates that whatever damage existed that would have caused leaks existed prior to the commencement of the bankruptcy case. For the post-commencement to rejection period of time, as stated above, Applicant has been allowed the costs necessary for the emergency inspection and repairs. Mr. Dorsa's testimony continues:

> 17.    Debtor also breached Section 11 of the Lease by failing to maintain the required condition of the roof during its tenancy. As a result, [Applicant] has had roofing contractors out to the Property to estimate the costs of repairing other roof damage incurred in the early stages of this bankruptcy and prior to rejection of the Lease. Additionally, the roof now needs to be replaced due to the lack of care of Debtor. The total of those repairs are set forth below.

Declaration, Dckt. 43.

Mr. Dorsa provides further truthful testimony, as stated above in paragraph 17 of his Declaration, that the Debtor, during the Four Thousand One Hundred and Fifteen (4,115) days prior to the commencement of the bankruptcy case failed to maintain the roof.

No other evidence was presented to the court in support of the maintenance and repair expense of $98,600.00 for pre-petition damage repairs and the asserted $172,654.00 obligation to give Applicant a new roof as an 11 U.S.C. § 365(d)(3) administrative expense obligation of the Bankruptcy Estate other than Mr. Dorsa's testimony. This testimony is just that this is what he heard contractors say, without regard to the actual work done, whether the replacement would be just to get the roof back to a pre-existing condition, or whether the roof had exhausted its useful life due to normal wear and tear, even if there had been maintenance, and these costs would have to be incurred without regard to any pre-petition defaults by Debtor.

Looking to Section 11 of the Lease, it does state that Tenant will keep the Property in good condition and repair, and continues stating that Tenant will:

> [d]eliver to Landlord **physical possession of the Premises** at the end of the Term, or any extension of the Term, **in good condition and repair**, **reasonable wear and tear and use** and loss by fire or other casualty or by earthquake or other act of God **excepted.**

Lease, § 11; Exhibit A, Dckt. 44 (emphasis added). As stated in the Lease, Tenant is not required to deliver possession back to the Applicant in the same condition as when received, but subject to "reasonable wear and tear and use." The evidence presented by Applicant does not go beyond only

15

1  stating Mr. Dorsa heard someone else say what that other person thought it would cost for the

2  Bankruptcy Estate to give Applicant a brand-new roof.  The evidence does not provide the court

3  with the beginning condition of the roof, does not take into account the normal wear and tear on a

4  roof baking under the summer sun and pounded by winter rains during the Four Thousand Four

5  Hundred and Fifteen (4,415) day pre-petition period for this Lease.  The evidence does not show

6  how and why the demanded new roof is an "obligation" of the Bankruptcy Estate arising in the 60-

7  day post-filing pre-rejection window.

8          Section 11 of the Lease also gives Applicant (and Applicant's predecessor original lessor)

9  the right and power to make any necessary repairs or maintenance to the Property if the Debtor

10 failed to do so.  While not required, it does give a good faith and prudent landlord the right to protect

11 the Property if the Tenant were to fail to fulfill the repair and maintenance obligations under the

12 Lease.   No evidence was presented as to what Applicant and its predecessor landlord did for

13 inspecting the Property, seeking to address any significant defaults by Debtor, or belief that there

14 was ongoing damage to the Property in violation of the Lease.

15 <u>Proof of Claim 10-1 Establishes That</u>
   <u>the Roof Maintenance and Roof Replacement</u>
16 <u>Damages Occurred Pre-Petition</u>

17         Applicant filed Proof of Claim 10-1 in this case.[4]  Proof of Claim 10-1 filed on June 25,

18 2019, states a claim in the amount of $541,225.81 based on the obligations arising under the Lease

19 as of the filing of this case.  Of this, Applicant states that $379,863.02 of this pre-petition claim is

20 entitled to priority payment pursuant to 11 U.S.C. § 507(a)(2).  POC 10-1, Part 2, ¶ 12.

21         In the Attachment to Proof of Claim 10-1 titled "Charges for Unsecured Claim of

22 [Applicant]," the total unsecured claim is stated to be $541,225.81.  In this amount is $174,054.00

23 for the "Roofer's estimate to install a new roof and gutters to building to the extent they are not

24 allowed under the Administrative Claim sought by motion," and $98,600.00 for "General

25 contractor's estimate for roof-related repairs to the extent they are not allowed under the

26

27

28     [4] A proof of claim is *prima facie* evidence of the claim stated therein.  *See*, *Wright v. Holm (In re Holm)*, 931 F.2d 620, 623 (9th Cir. 1991).

16

Administrative Claim sought by Motion."

Proof of Claim 10-1 states that as of the filing of the Bankruptcy Case there was $274,654.00 in pre-petition roof replacement and roof-related repair damages that existed. This is consistent with the evidence presented by Applicant in support of this Motion that the damage and failure to maintain did not arise in the 11 U.S.C. § 365(d)(3) sixty (60) day period from the February 6, 2019, commencement of this case through the April 7, 2019 rejection of the Lease.

Additionally, in its final Supplemental Points and Authorities filed on March 1, 2021, with respect to the cause of the roof and roof related damages, Applicant states; "As to the other expenses claimed by [Applicant], those **expenses were directly caused by Debtor's failure to keep the roof in working condition, a violation of a specific covenant in the lease**." Supp. P&A, p. 9:5-8; Dckt. 125 (emphasis added). This all occurred pre-petition and not during the 11 U.S.C. § 365(d)(3) period (60 days in this case) from the commencement of the Bankruptcy Case to the rejection of the Lease.

Applicant's assertion that because the Debtor had a pre-petition obligation to provide the ordinary repair and maintenance to the Property, then hundreds of thousands of dollars of alleged pre-petition defaults by Debtor are visited on the Bankruptcy Estate and other pre-petition creditors of Debtor. This applies even when the Lease was part of the Bankruptcy Estate in this case for the short sixty (60) day window from filing of the Bankruptcy Case to rejection of the Lease. Such assertion works a perversion on the Bankruptcy Code. If the Bankruptcy Estate had the "obligation" to cure all pre-petition repair and maintenance defaults of Debtor and have to pay such as an administrative expense, then why would the Bankruptcy Estate not have to cure (as such obligation could be stated to exist): (1) all pre-petition rent defaults asserted, (2) all pre-petition property tax defaults, (3) all pre-petition insurance defaults, (4) all pre-petition attorney's fees, and (5) any other pre-petition default of Debtor that Applicant could construct?

In substance, Applicant's argument is that so long as a pre-petition lease of nonresidential real property exists in a bankruptcy estate, even if for a mere day (or minutes) before the lease is rejected, every and all pre-petition default obligations of the Debtor owed a landlord become administrative expenses for the bankruptcy estate to pay ahead of all other creditors with pre-petition

claims. Such is not what Congress provides in 11 U.S.C. § 365(d)(3).

The court does not allow Applicant $272,654.00, or any portion thereof, for the Installation of New Roof and Gutters, and Repairs Related to Roof Damages pursuant to 11 U.S.C. § 563(d)(3) as not "arising from and after the order for relief [February 6, 2019] under any unexpired lease of nonresidential real property, until such lease [was] . . . rejected" on April 7, 2019.

**Attorney's Fees and Costs From**
**February 6, 2019 to April 7, 2019**

Applicant also seeks to recover $29,521.50 for Attorney's Fees and Costs attributed to the sixty (60) day period from February 6, 2019, commencement of this Bankruptcy Case to the April 7, 2019 rejection of the Lease. Applicant's Motion does not provide the grounds upon which such attorney's fee and cost request is based. Dckt. 40.

The testimony concerning these attorney's fees and costs in the Declaration of Barton C. Dorsa consists of:

> 18. As a result of the breach of the Lease and the filing of this bankruptcy, [Applicant] incurred legal fees and costs related to the assumption and/or rejection of the Lease. Those fees and costs are set forth in the Declaration of Stanford H. Atwood, Jr. and reimbursement is sought as part of this Administrative claim.

Dec. ¶ 18; Dckt. 43. Mr. Dorsa directs the court to the Declaration of Applicant's attorney for the amount and basis for such fees and expenses to be part of the 11 U.S.C. § 365(d) administrative expense.

Applicant's counsel Stanford Atwood, Jr. provides testimony in his Declaration as evidence of the legal fees and expenses to be paid as an administrative expense, which testimony consists of:

> 8.     As a result of the breach of the Lease and the filing of this bankruptcy, [Applicant] incurred legal fees and costs related to the assumption and/or rejection of the Lease and for emergency roof repairs and other issues related to the bankruptcy.

> 9.     [Applicant] is seeking payment of the attorney fees and costs set forth below as an administrative expense from the time the bankruptcy was filed up through the date of entered Order rejecting the Lease by the estate on April 7, 2019.

> 10.    I have been a practicing attorney in California for over 50 years. My hourly billing rate for the fees incurred in this case is $560 per hour. I also retained Benjamin R. Levinson, an attorney with expertise in bankruptcy, to undertake contractual work with regard to this bankruptcy. His work was not duplicate of the

work that I undertook or that anyone in our office undertook. The billing rate of Mr. Levinson charged to [Applicant] for the contractual work performed by him is $420 per hour.

11.    [Applicant] is seeking reimbursement of attorney fees and costs as an Administrative expenses as follows:

| | | |
|---|---|---|
| Stanford H. Atwood, Jr. Attorney fees:<br>(28.96 hrs at $560 per hour) | $16,220.00 | |
| Benjamin R. Levinson Attorney fees:<br>(31.10 hrs at $420 per hour) | $13,062.00 | |
| Total    Administrative Attorney Fees: | $29,282.00 | |
| Costs: Travel mileage to Modesto and<br>Meal Costs: | $ 239.50 | |

TOTAL ADMINISTRATIVE ATTORNEY FEES AND COSTS:    $29,521.50

Dec., ¶¶ 8-11; Dckt. 45.

The above testimony tells the court that Applicant wants to be paid $29,521.50, but provides no evidence documenting the legal work done (such as a standard billing statement used in seeking the award or allowance of attorney's fees for professionals employed by a trustee or as may be awarded a prevailing party in contested matters, adversary proceedings, and other litigation in federal court), or how such legal work can be determined reasonable under the contract (the Lease) and fall  within 11 U.S.C. § 365(d)(3).

No time and charges billing statements are provided as an exhibit in support of the Motion. Exhibits, Dckt. 44.

In the Points and Authorities filed in support of the Motion, Applicant states the basis for the inclusion of the $29,521.50 in the 11 U.S.C. § 365(d)(3) obligation as follows:

The attorney fees incurred by [Applicant] from the filing of the bankruptcy up through rejection of the Lease related to the issue of rejection, fall under the provisions of the Lease set forth above and should also be allowed. *See In re Multiple Allied Services, Inc.*, 2010 WL 4505391 (Bankr. N.D. Cal. 2010). Those fees are detailed in the Declaration of Stanford H. Atwood submitted with this Motion. The charges sought for attorney fees for landlord up through the date of rejection of the Lease should be allowed as part of the [Applicant] Administrative expense.

Points and Authorities, pp. 5:24-26, 6:1-3; Dckt. 42.   Though argued in the Points and Authorities that the fees and expenses are "detailed in the Declaration of Stanford H. Atwood," no such detail

is provided, but only that Applicant seeks payment of the gross amount of $29,521.50, which is comprised of the sub-gross amounts of $16,220.00 for Mr. Atwood's legal services, $13,062.00 for Mr. Levinson's legal services, and $239.50 for travel mileage and meals.

The court has also reviewed the Supplemental Declarations of Stanford Atwood, Jr., Esq. (Dckt. 55) and Benjamin R. Levinson, Esq. (Dckt. 126), attorney's for Applicant, and neither provide detailed information about the legal services provided, such as time and billing records describing the "legal" work done.

In Mr. Levinson's declaration, he does testify that at the request of Mr. Atwood, Mr. Levinson met with the Trustee on the Property to examine its current, post-petition, condition. Dec., ¶¶ 3-4; Dckt. 126. The Declaration states that Mr. Levinson was there "for approximately an hour." *Id*., ¶ 4. In Mr. Atwood's Declaration he testifies that Mr. Levinson's billing rate is $420.00 an hour.

Applicant's request for legal fees and expenses is little more than a demand/instruction to the court to award the gross amounts stated by Applicant, and that the court "does not need to know" what was billed, why it was billed, why it is reasonable, why it falls within the contractual attorney's fee provision, and how it properly relates to being an expense falling within 11 U.S.C. § 365(d)(3).

As these experienced attorneys for Applicant well know, contractual attorney's fees awarded by a court are not merely what amount is demanded by a party. In the Ninth Circuit, the customary method for determining the reasonableness of legal fees is the "lodestar" calculation. *Morales v. City of San Rafael*, 96 F.3d 359, 363 (9th Cir. 1996), amended, 108 F.3d 981 (9th Cir. 1997). "The 'lodestar' is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation by a reasonable hourly rate." *Morales*, 96 F.3d at 363 (citation omitted). "This calculation provides an objective basis on which to make an initial estimate of the value of a lawyer's services." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). An attorney's fee award based on the lodestar is a presumptively reasonable fee. *In re Manoa Fin. Co.*, 853 F.2d 687, 691 (9th Cir. 1988).

However, to do such a loadstar calculation, the court must be provided with what the legal services were and what was billed for each service – not merely a lump sum demand by a party

showing only the gross aggregate hours multiplied by an hourly rate. Other than Mr. Levinson's testimony that he spent approximately an hour meeting with the Trustee at the Property, the court has no idea of what is included in the $29,521.50 gross amount, and whether what is included therein is reasonable and properly allowable under the contractual attorney's fees provision.

The court allows pursuant to 11 U.S.C. § 365(d)(3), based on the evidence presented, Applicant $1,260.00 in legal fees, which provides for three (3) hours of billing for Mr. Levinson to travel to and from the Property, and meet there for approximately one (1) hour with the Trustee, that are "arising from and after the order for relief [February 6, 2019] under any unexpired lease of nonresidential real property, until such lease [was] . . . rejected" on April 7, 2019.

**AMOUNT OF OBLIGATIONS ALLOWED PURSUANT TO**
**11 U.S.C. § 365(d)(3) AND**
**THE BALANCE REQUESTED BY APPLICANT NOT ALLOWED**

The court allows Applicant $77,878.77 for the 11 U.S.C. § 365(d)(3) obligations of the Bankruptcy Estate for the period from the February 6, 2019 filing of this voluntary Bankruptcy Case (date of the order for relief) and the April 7, 2019 rejection of the Lease, which consist of:

1.   Lease Payments............................................$64,125.00

2.   Late Fees......................................................$ 2,137.50

3.   Property Taxes..............................................$ 7,936.56

4.   Fire, Vandalism, and
     General Liability Insurance............................$ 1,219.71

5.   Emergency Roof Repair
     and Inspection...............................................$ 1,200.00

6.   Attorneys Fees and Expenses
     For February 6 through April 7, 2019.............$ 1,260.00

The court does not allow as obligations arising under 11 U.S.C. § 365(d)(3) and owed as an administrative expense by the Bankruptcy Estate in this case any and all other amounts requested by Applicant in the Motion.

///

///

///

The court shall issue a separate Order consistent with this Memorandum Opinion and Decision.

**Dated:** March 29, 2022

**By the Court**

_____

**Ronald H. Sargis, Judge**
**United States Bankruptcy Court**

# Instructions to Clerk of Court
### Service List - Not Part of Order/Judgment

**The Clerk of Court is instructed to** send the Order/Judgment or other court generated document transmitted herewith *to the parties below*.  The Clerk of Court will send the document via the BNC or, if checked _____, via the U.S. mail.

| Debtor(s) | Attorney(s) for the Debtor(s) (if any) |
|---|---|
| **Bankruptcy Trustee** (if appointed in the case) | Office of the U.S. Trustee<br>Robert T. Matsui United States Courthouse<br>501 I Street, Room 7-500<br>Sacramento, CA 95814 |
| **Attorney(s) for Trustee** (if any) | Stanford H. Atwood, Esq.<br>750 University Avenue, Ste. 130<br>Los Gatos, CA 95032 |